IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LINDA S. K.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:19-cv-00598-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Linda K. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On June 15, 2015, plaintiff filed her DIB application, alleging disability as of June 9, 2015. Tr. 72. Her application was denied initially and upon reconsideration. Tr. 97-101, 103-05. On February 16, 2018, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 43-71. On May 1, 2018, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 28-38. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-8.

## STATEMENT OF FACTS

Born on June 16, 1959, plaintiff was 55 years old on the alleged onset date and 58 years old at the time of the hearing. Tr. 28, 72. Plaintiff graduated from high school in 1977. Tr. 174. She worked previously as a shift lead, assembler, cashier, hostess, night manager, and receptionist. Tr. 188. Plaintiff alleges disability due to post-traumatic stress disorder, peripheral neuropathy, polyneuropathy, and fibromyalgia. Tr. 173.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of

the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the

national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since June 9, 2015, the alleged onset date. Tr. 33. At step two, the ALJ determined the following impairments were medically determinable and severe: "polyneuropathy; fibromyalgia; trochanteric bursitis of the bilateral hips; and bilateral sacroiliac joint dysfunction." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 34.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a limited range of light exertion work:

> She can perform tasks involving no more than 6 hours of sitting, and no more than 6 hours of standing/walking in an 8-hour workday (with normal breaks). She can occasionally climb ladders, ropes or scaffolds. She can frequently crawl. She must avoid concentrated exposure to workplace hazards, including unprotected heights or dangerous machinery.

Tr. 34-35.

At step four, the ALJ determined plaintiff was capable of performing her past relevant work as a mortgage clerk, waitress, cashier, salesclerk, and electronic assembler/tester. Tr. 37.

## DISCUSSION

Plaintiff argues that the ALJ erred by improperly rejecting the medical opinion of her treating doctor Kathy Chang, M.D. At the time of the ALJ's decision, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted

opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons, supported by substantial evidence. Id.

Plaintiff initiated care with Dr. Chang in January 2015 and obtained treatment every few months through October 2017. Tr. 364, 430-33, 507, 511, 515, 517, 521, 524. On June 11, 2015, Dr. Chang completed a Family Medical Leave Act form for plaintiff's employer, Walgreens. Tr. 363-69. Dr. Chang opined plaintiff could not perform any of her job functions due to chronic pain and anxiety:

> she is having severe anxiety with panic attacks due to worsening severity of her physical pain symptoms and anticipation of trying to comply with work expectations that she may not physically be able to perform. She is on extensive medical therapy but having worsening control of her pain and anxiety.

Tr. 363-64. Dr. Chang concluded that plaintiff was unable to "walk, lift, bend, climb or sit" in connection with her work. Tr. 364. She recommended plaintiff leave work for recovery and noted the period of incapacitation as "6/9/2015–unknown." Tr. 364-65. Dr. Chang described plaintiff's treatment plan as "repeated autoimmune/inflammatory screening labs, referrals to Neurology and Rheumatology, and follow up counseling/mental health." Tr. 366.

The ALJ rejected Dr. Chang's medical opinion because it was inconsistent with the other medical evidence of record, as well as Dr. Chang's own treatment notes. Tr. 36-37. Inconsistency between a physician's medical opinion and her treatment notes is a legally sufficient reason to reject that opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

Substantial evidence supports the ALJ's conclusion. The record includes discrepancies between Dr. Chang's treatment notes and her medical opinion.[2] Notably, the bulk of Dr. Chang's treatment notes address plaintiff's anxiety and her medication plan, as opposed to issues with her chronic pain. Tr. 515, 517, 521, 523. Yet Dr. Chang is not a mental health specialist. As a result, Dr. Chang repeatedly advised plaintiff to seek mental health counseling and attend the Good Moves and Living Well with Chronic Conditions classes, explaining that "life stressors need to be dealt with in other ways, not just with medication." Tr. 508, 513, 519.

Plaintiff did not follow up on these recommendations. While, on two occasions, plaintiff cited a lack of insurance as the reason for not undergoing counseling, the record does not reflect that plaintiff looked into any no- or low-cost options, and she routinely sought medical treatment when she wanted or believed she needed it. Tr. 513, 523. Further, Dr. Chang's notes suggest that plaintiff was functional on her anxiety medication: plaintiff told Dr. Chang that, "she doesn't want to change Xanax because she's been on it since 1994 and it's worked for her." Tr. 511. In a subsequent visit, Dr. Chang attributed plaintiff's psychological symptoms to her medication dependence: "it seems that [plaintiff] is not having panic attacks but having withdrawal symptoms related to her use of the alprazolam [Xanax] twice a day." Tr. 512. Similarly, Dr. Chang treated plaintiff on May 3, 2017, noting her chief complaint was medication management, with plaintiff stating: "[she] really wants to go back to Xanax because she can't deal with the panic attacks right now and 'at least I was functional' with the previous regimen." Tr. 521-22. Towards the end of their treatment relationship, Dr. Chang advised plaintiff that she needed to reduce her dependence

---

[2] Although Dr. Chang apparently treated plaintiff as early as January 2015, the record does not include any chart notes prior to August 2015. These omissions make it difficult to discern on what basis Dr. Chang rendered her opinion. Nonetheless, her subsequent treatment notes, along with other portions of the medical record, support the ALJ's decision, as discussed herein.

on Xanax. Tr. 523, 526. Shortly thereafter, plaintiff sought care with a different provider due to Dr. Chang's "personal problem with Xanax." Tr. 530.

Dr. Chang addressed plaintiff's chronic pain on only four occasions over the course of treatment. Tr. 431, 507, 511, 527. While Dr. Chang noted that plaintiff was "positive for myalgias, back pain, arthralgias, and joint swelling," she subsequently described plaintiff's pain as "mild left hip flexor tendon tenderness on palpitation." Tr. 430, 508. Dr. Chang repeatedly encouraged plaintiff to engage in regular physical activity and provided her with rehabilitation exercises, which would help her muscles, body, and pain management. Tr. 509. On October 3, 2017, Dr. Chang advised plaintiff to increase her physical activity to lose weight and achieve better stamina, and declined to write plaintiff a letter regarding her DIB claim. Tr. 526.

Several other medical providers treated plaintiff during the adjudication period and observed only mild findings concerning her chronic pain and anxiety. For instance, Robert Choi, M.D., a neurologist who treated plaintiff six times from November 2014 through August 2015, found that plaintiff had "gone through extensive medical and rheumatologic workup and nothing really showed up."[3] Tr. 383. Throughout treatment, Dr. Choi assessed plaintiff as having mild peripheral neuropathy. Tr. 371, 374, 377, 380, 382, 384. His objective findings revealed plaintiff's motor strength was intact and symmetric, and that her gait was steady. Tr. 371, 374, 377, 380, 384. Dr. Choi also examined plaintiff's mental status and denoted that she demonstrated appropriate alertness, orientation, speech, memory, attention, and fund of knowledge. Tr. 371, 374, 377, 380.

Additionally, the record includes notes from Marlin Lobaton, D.O., who examined plaintiff on December 29, 2017, two months after plaintiff stopped seeing Dr. Chang. Tr. 530. Dr.

---

[3] In her decision, the ALJ errantly attributed Dr. Choi's treatment notes to Dr. Chang, but neither party raises this as error, as it appears to be a mere scrivener's error.

Lobaton's notes reflect that plaintiff "has been on medications for a long time and they were working well before her medications were decreased," and that "she needs her Xanax to feel normal." Id. Dr. Lobaton reported plaintiff "was not following up with any mental specialist to work on [coping mechanisms] and missed her last appointment," and that plaintiff was "not interested in support groups." Tr. 532.

Finally, the ALJ considered the medical opinion of examining physician, Corbett Silcox Richards, D.O. Tr. 36-37. Dr. Richards assessed plaintiff on February 2, 2018, days before the administrative hearing. Tr. 534. He noted that plaintiff was consuming approximately ten beers a day, and warned plaintiff not to mix alcohol and Xanax. Tr. 538. He nonetheless concluded plaintiff was "clinically stable." Id. The mild objective findings, coupled with Dr. Chang's chart notes and plaintiff's failure to follow her doctor's recommendations, indicate that plaintiff is capable of work consistent with the RFC. In sum, the ALJ's rejection of Dr. Chang's medical opinion is affirmed.

## CONCLUSION

For the reasons stated above, The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 13th day of February, 2020.

                    /s/ Jolie A. Russo
                      Jolie A. Russo
            United States Magistrate Judge